# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 13, 2015        Decided August 14, 2015

No. 14-5036

FLORIDA BANKERS ASSOCIATION AND TEXAS BANKERS
ASSOCIATION,
APPELLANTS

v.

UNITED STATES DEPARTMENT OF THE TREASURY, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-00529)

*Stephen C. Leckar* argued the cause for appellants. With
him on the briefs were *James J. Butera* and *Ryan D. Israel*.

*Andrew M. Weiner*, Attorney, U.S. Department of Justice,
argued the cause for appellees. With him on the brief were
*Gilbert S. Rothenberg* and *Teresa E. McLaughlin*, Attorneys.

Before: HENDERSON and KAVANAUGH, *Circuit Judges*,
and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge*
KAVANAUGH, with whom *Senior Circuit Judge* RANDOLPH
joins.

Concurring opinion filed by *Senior Circuit Judge* RANDOLPH.

Dissenting opinion filed by *Circuit Judge* HENDERSON.

KAVANAUGH, *Circuit Judge*: We again confront the Anti-Injunction Act. The Act says that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a). Among other things, the Act generally bars pre-enforcement challenges to certain tax statutes and regulations. The Act requires plaintiffs to instead raise such challenges in refund suits after the tax has been paid, or in deficiency proceedings. The Act thus creates a narrow exception to the general administrative law principle that pre-enforcement review of agency regulations is available in federal court. *See Abbott Laboratories v. Gardner*, 387 U.S. 136, 152-53 (1967). The Act thereby "protects the Government's ability to collect a consistent stream of revenue." *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566, 2582, slip op. at 11 (2012).

This case concerns an IRS regulation that imposes a "penalty" on U.S. banks that fail to report interest paid to certain foreign account-holders. *See* 26 C.F.R. §§ 1.6049-4, 1.6049-8 (reporting requirement); 26 U.S.C. § 6721(a) (penalty). Two Bankers Associations – the Florida Bankers Association and the Texas Bankers Association – challenge the legality of the regulation. The Government argues that their suit is premature at this time because of the Anti-Injunction Act.

The question before us is straightforward: Is a challenge to a tax-related statutory or regulatory requirement that is

enforced by a "penalty" – as opposed to a challenge to a statute or regulation that imposes a tax – covered by the Anti-Injunction Act? The answer to that question is often no. But the Tax Code defines some penalties as taxes for purposes of the Anti-Injunction Act. In those cases, the Anti-Injunction Act ordinarily applies because the suit, if successful, would invalidate the regulation and thereby directly prevent collection of the tax.

This is just such a case. The penalty at issue here is located in Chapter 68, Subchapter B of the Tax Code. *See* 26 U.S.C. § 6721. The Tax Code provides that penalties in Chapter 68, Subchapter B are treated as taxes under the Anti-Injunction Act. *See id.* § 6671(a); *NFIB*, 132 S. Ct. at 2583, slip op. at 13. The Supreme Court explicitly confirmed as much in *NFIB*, stating: "Penalties in subchapter 68B" are "treated as taxes under Title 26, which includes the Anti-Injunction Act." *NFIB*, 132 S. Ct. at 2583, slip op. at 13. Plaintiffs' suit, if successful, would invalidate the reporting requirement and restrain (indeed eliminate) the assessment and collection of the tax paid for not complying with the reporting requirement. For that reason, the Anti-Injunction Act bars this suit as premature. We vacate the judgment of the District Court and remand with directions to dismiss the case on those grounds.[1]

---

[1] Under the law of this Court, the Anti-Injunction Act is jurisdictional. *See Gardner v. United States*, 211 F.3d 1305, 1311 (D.C. Cir. 2000). Of course, that label has practical significance only when the Government waives or forfeits its argument that the Anti-Injunction Act bars a claim. Here, the Government asserted that the Anti-Injunction Act bars plaintiffs' claim, so the jurisdictional or non-jurisdictional label carries no practical significance for this case.

To be clear, our ruling does not prevent a bank from obtaining judicial review of the challenged regulation. A bank may decline to submit a required report, pay the penalty, and then sue for a refund. At that time, a court may consider the legality of the regulation. The issue here is *when* – not *if* – the bank may challenge the regulation. Indeed, a bank that had followed that path from the time this litigation began several years ago would likely have already obtained judicial review of the challenged regulation.

I

The Anti-Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a). The Declaratory Judgment Act likewise prohibits most declaratory suits "with respect to Federal taxes." 28 U.S.C. § 2201(a). This Court has interpreted the two Acts to be "coterminous." *Cohen v. United States*, 650 F.3d 717, 730-31 (D.C. Cir. 2011) (en banc). For simplicity, we will refer only to the Anti-Injunction Act.

The IRS regulation at issue here requires banks to report interest paid "to a nonresident alien individual who is a resident of a country . . . with which the United States has in effect an income tax or other convention or bilateral agreement relating to the exchange of tax information." 26 C.F.R. § 1.6049-8; *see also id.* § 1.6049-4 (requiring the reporting of interest, as defined in Section 1.6049-8). Banks file those reports using Forms 1096 and 1099-INT.

If a bank fails to file the required report, that bank is subject to a "penalty" under 26 U.S.C. § 6721(a). Because of its location in the U.S. Code, that penalty is treated as a tax for purposes of the Anti-Injunction Act. We know that for

two good reasons: The text of the Tax Code says so, and the Supreme Court says so.

The Tax Code is located in Title 26 of the U.S. Code. Title 26 is subdivided into chapters numbered 1 through 100. Chapter 68, Subchapter B provides that the penalties in that Subchapter are considered taxes: "Except as otherwise provided, any reference in this title to '*tax*' imposed by this title shall be deemed *also to refer to the penalties and liabilities* provided by this subchapter." 26 U.S.C. § 6671(a) (emphasis added). In other words, under Section 6671(a), any provision in Title 26 that refers to a "tax" imposed by that title applies to penalties imposed under Chapter 68, Subchapter B. The Anti-Injunction Act, which bars suits to restrain the assessment or collection of taxes, is part of Title 26. Therefore, the Anti-Injunction Act also bars suits to restrain the assessment or collection of penalties imposed under Chapter 68, Subchapter B.

The penalty provision at issue in this case – Section 6721(a) – is located in Chapter 68, Subchapter B. Under Section 6671(a), the penalty is therefore treated as a tax for purposes of Title 26 – including the Anti-Injunction Act. Because this suit would have the effect of restraining (indeed eliminating) the assessment and collection of that tax, the Anti-Injunction Act bars this suit.

The key Supreme Court precedent confirms as much. In *NFIB*, the Supreme Court stated that penalties in Chapter 68, Subchapter B are taxes for purposes of the Anti-Injunction Act. The Court's words were clear and unequivocal: "Penalties in subchapter 68B are thus treated as taxes under Title 26, which includes the Anti-Injunction Act." *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566, 2583, slip op. at 13 (2012). Had the penalty at issue in

*NFIB* been located in Chapter 68, Subchapter B, the Anti-Injunction Act would have applied, according to the Court. *See id.* But the penalty at issue in *NFIB* was located in another portion of the Code (Chapter 48); for that reason, the Anti-Injunction Act did not apply in that case, the Court said. *Id.* at 2583-84, slip op. at 13-15. The Court concluded as follows: "The Affordable Care Act does not require that the penalty for failing to comply with the individual mandate be treated as a tax for purposes of the Anti-Injunction Act. The Anti-Injunction Act therefore does not apply to this suit, and we may proceed to the merits." *Id.* at 2584, slip op. at 15.

In this case, unlike in *NFIB*, the penalty is located in Chapter 68, Subchapter B. Therefore, under the Court's analysis in *NFIB*, the penalty for failing to comply with the reporting requirement at issue here is a "tax" under the Anti-Injunction Act. So the Anti-Injunction Act bars this suit.

## II

In response, plaintiffs point to a recent Supreme Court decision involving the Tax Injunction Act, which is often interpreted to be similar in scope to the Anti-Injunction Act. *See Direct Marketing Association v. Brohl*, 135 S. Ct. 1124, 1129, slip op. at 5 (2015). The Tax Injunction Act, in essence, bars as premature those suits targeting state tax schemes. *See id.* at 1129, slip op. at 4-5. In that case, the Court confronted a Colorado tax notice requirement, the violation of which was subject to a $5 penalty provided by Colorado law. *Id.* at 1128, slip op. at 2-3. The Court held that the Tax Injunction Act did not bar a challenge to that requirement. *Id.* at 1127, slip op. at 1.

In this case, we likewise confront a reporting requirement that is enforced by a penalty. But in this case, Section 6671(a) treats the penalty as a tax for purposes of the Anti-

Injunction Act. The penalty in *Direct Marketing Association* was not itself a tax, or at least it was never argued or suggested that the penalty in that case was itself a tax. The Anti-Injunction Act therefore applies here, unlike in *Direct Marketing Association*.

To put it another way: If the penalty here were not itself a tax, the Anti-Injunction Act would not bar this suit. But because this penalty is deemed a tax by Section 6671(a), the Anti-Injunction Act bars this suit as premature.

On page 27 of their reply brief, plaintiffs briefly cite this Court's decision in *Foodservice & Lodging Institute, Inc. v. Regan*, 809 F.2d 842 (D.C. Cir. 1987). One regulation at issue in *Foodservice* required food and beverage establishments to report certain amounts that their employees earned in tips. *See id.* at 846; *see also* 26 U.S.C. § 6053(c)(1) (1982). We concluded that on "its face, the regulation does not relate to the assessment or collection of taxes, but to IRS efforts to determine the extent of tip compliance in the food and beverage industry." *Foodservice*, 809 F.2d at 846. Therefore, the Anti-Injunction Act did not bar petitioner's challenge to that reporting requirement.

The penalty for non-compliance with the reporting requirement in *Foodservice* was a penalty, not a tax. *See* 26 U.S.C. § 6652(a)(1)(B)(iv) (1982). The *Foodservice* Court proceeded as if failure to comply with the regulation would not itself require the payment of a tax (or of a penalty deemed to be a tax by the Tax Code). *See Foodservice*, 809 F.2d at 846. The Court therefore analyzed the case along the same lines that the Supreme Court later analyzed *Direct Marketing Association*. As relevant here, all that *Foodservice* stands for is this settled proposition: The Anti-Injunction Act ordinarily does not bar a challenge to a reporting requirement when the

penalty that enforces the reporting requirement is not itself treated as a tax under the Code.

Here, by contrast, we know that the penalty is a tax for purposes of the Anti-Injunction Act. The Tax Code itself provides as much. And in *NFIB*, the Supreme Court unequivocally confirmed that these penalties in Chapter 68, Subchapter B are "treated as taxes under Title 26, *which includes the Anti-Injunction Act*." *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566, 2583, slip op. at 13 (2012) (emphasis added).

In sum, *Direct Marketing Association* and *Foodservice* do not control this case because the penalty at issue here is itself a tax for purposes of the Anti-Injunction Act. Unlike in those two cases, the tax here is not two or three steps removed from the regulation in question. Here, because the Code defines the penalty as a tax, a tax is imposed as a direct consequence of violating the regulation. Invalidating the regulation would directly bar collection of that tax. This case is therefore at the heartland of the Anti-Injunction Act.

III

Plaintiffs raise an alternative argument. In their view, even if the penalty here is deemed a tax for purposes of the Anti-Injunction Act, the Act still does not apply because plaintiffs do not seek to restrain the assessment or collection of the penalty. They contend instead that they are seeking "relief from a regulatory mandate that exists separate and apart from the assessment or collection of taxes." Plaintiffs' Reply Br. 26. The Anti-Injunction Act cannot be sidestepped by such nifty wordplay. The Supreme Court has consistently ruled – and most recently indicated as well in *NFIB* – that plaintiffs cannot evade the Anti-Injunction Act by purporting to challenge only the regulatory aspect of a regulatory tax.

In *Alexander v. "Americans United" Inc.*, 416 U.S. 752 (1974), the IRS had revoked the tax exempt status of Americans United, which affected the organization's tax liability and the ability of the organization's donors to deduct contributions from their taxes. In an effort to avoid the Anti-Injunction Act's bar, Americans United styled its suit as an objection to the laws under which its tax-exempt status was revoked rather than to its increased tax burden. *Id.* at 755-58. Americans United argued that its suit would have "at best a collateral effect" on the assessment or collection of taxes. *Id.* at 760. It therefore contended that the suit was not barred by the Anti-Injunction Act.

The Supreme Court disagreed. The Court explained that if Americans United prevailed, its tax exempt status would be reinstated and the United States would necessarily collect fewer taxes from the organization and its charitable contributors. A "suit to enjoin the assessment or collection of anyone's taxes triggers the literal terms" of the Act. *Id.* The Supreme Court said it would be "circular" to conclude that a regulatory challenge that would preclude the collection of taxes was not a suit for the purpose of restraining the collection of those taxes. *Id.* at 761.

In another case that same year, the Court similarly found that a challenge to the IRS's revocation of tax exempt status was barred by the Anti-Injunction Act. As the Court explained there, if the relief plaintiffs seek "would necessarily preclude the collection" of "taxes" within the meaning of the Act, "a suit seeking such relief falls squarely within the literal scope of the Act." *Bob Jones University v. Simon*, 416 U.S. 725, 732 (1974); *see id.* at 738-39.

Those two cases built on *Bailey v. George*, 259 U.S. 16 (1922). There, the Supreme Court held that the Anti-

Injunction Act blocked a pre-enforcement suit to enjoin collection of the federal Child Labor Tax. *Id.* at 19-20. The suit targeted the regulatory aspect of the tax, but the Court still held that the Anti-Injunction Act applied and barred the suit. *Id.*

As the Supreme Court's case law reveals, the Court has "abandoned" any distinction between "regulatory and revenue-raising taxes" for purposes of the Anti-Injunction Act. *Bob Jones*, 416 U.S. at 741 n.12; *see United States v. Sanchez*, 340 U.S. 42, 44-45 (1950); *Sonzinsky v. United States*, 300 U.S. 506, 513 (1937). A challenge to a regulatory tax comes within the scope of the Anti-Injunction Act, even if the plaintiff claims to be targeting the regulatory aspect of the regulatory tax. That is because invalidating the regulation would directly prevent collection of the tax, in violation of the Anti-Injunction Act. *See also Z Street v. Koskinen*, No. 15-5010, 2015 WL 3797974, at *3 (D.C. Cir. June 19, 2015) (describing *"Americans United"* and *Bob Jones* as saying that notwithstanding the plaintiffs' claims in those cases, the "obvious purpose" of their suits was to reduce payment of taxes).[2]

Consistent with that line of cases, *NFIB* itself further refutes plaintiffs' argument. In that case, in an alternative argument, the plaintiffs contended that the Anti-Injunction Act did not apply because they were challenging not the penalty but rather the underlying regulatory mandate that they purchase health insurance. The Government, while agreeing with the plaintiffs that the Anti-Injunction Act did not apply

---

[2] In *Z Street*, we held that the challenge there fell into an exception that the Supreme Court has made to the Anti-Injunction Act for cases "where the plaintiff has no other remedy for its alleged injury." *Z Street*, 2015 WL 3797974, at *6; *see generally South Carolina v. Regan*, 465 U.S. 367 (1984).

for other reasons, vigorously disputed that particular argument. Citing decades of Supreme Court case law, the Government explained: "Private respondents err in suggesting that they can avoid the AIA, if otherwise applicable, by characterizing their suit as a challenge to the statutory predicate for imposition of the minimum coverage penalty rather than the penalty itself." *NFIB* Government's Br. at 38.

In concluding that the Anti-Injunction Act did not bar the suit, the Supreme Court hewed to the line advanced by the Government. The Supreme Court concluded that the penalty at issue there was not a tax under the Anti-Injunction Act. Had the Court ended there, *NFIB* perhaps would not tell us much one way or the other about the regulatory tax issue. But *NFIB* also made clear that the Anti-Injunction Act would have applied if the penalty were a tax under the Act. The Court unequivocally stated: "Penalties in subchapter 68B are . . . treated as taxes under Title 26, which includes the Anti-Injunction Act." *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566, 2583, slip op. at 13 (2012). And the Court concluded that section of its opinion by saying: "The Affordable Care Act does not require that the penalty for failing to comply with the individual mandate be treated as a tax for purposes of the Anti-Injunction Act. The Anti-Injunction Act *therefore* does not apply to this suit, and we may proceed to the merits." *Id.* at 2584, slip op. at 15 (emphasis added).

In saying as much, the Supreme Court did not recognize or carve out a new exception to the Anti-Injunction Act for cases targeting taxes used to enforce regulatory mandates. Nor did the Court even suggest that was an open question. And it is all but impossible to deem the Court's words

inadvertent, given the extensive briefing and argument focused on that precise question.

The repercussions of plaintiffs' argument on this point show, moreover, why the Supreme Court has consistently rejected it. A taxpayer could almost always characterize a challenge to a regulatory tax as a challenge to the regulatory component of the tax. That would reduce the Anti-Injunction Act to dust in the context of challenges to regulatory taxes. But the Anti-Injunction Act is more than a pleading exercise, as the Supreme Court has explained time and again in concluding that it bars premature challenges to regulatory taxes.

Under *Bailey*, *Alexander*, *Bob Jones*, and *NFIB*, plaintiffs' challenge to the reporting requirement is necessarily also a challenge to the tax imposed for failure to comply with that reporting requirement. If plaintiffs' challenge were successful, the IRS would be unable to assess or collect that tax for failure to comply with the reporting requirement. Invalidating the reporting requirement would necessarily "restrain" the assessment and collection of the tax. This we cannot do.[3]

---

[3] In *Seven-Sky v. Holder*, 661 F.3d 1, 14 (D.C. Cir. 2011), we concluded that the Anti-Injunction Act did not bar a suit that challenged the individual mandate provision of the Affordable Care Act. We held that the penalty there was not a "tax" under the Act because it was located outside Chapter 68. *See id.* at 10-12. The Supreme Court agreed with our Anti-Injunction Act decision in *Seven-Sky* on precisely that ground. *NFIB*, 132 S. Ct. at 2583-84, slip op. at 13-15. *Seven-Sky* also cited *Foodservice* and noted that the Anti-Injunction Act has "never been applied to bar suits brought to enjoin regulatory requirements that bear no relation to tax revenues or enforcement." *Seven-Sky*, 661 F.3d at 9. That is true

13

\* \* \*

In sum, the Banking Associations' challenge to the reporting requirements in Sections 1.6049-4 and 1.6049-8 is barred by the Anti-Injunction Act and the tax exception to the Declaratory Judgment Act. We vacate the judgment of the District Court and remand with directions to dismiss the case on those grounds.

*So ordered.*

---

and corresponds to our holding in this case. The difference here, of course, is that the penalty in this case is itself treated as a tax under the Code, which is the point the Supreme Court emphasized in *NFIB*. Moreover, *Seven-Sky* never stated that, even assuming the penalty at issue there was itself a tax, the Anti-Injunction Act would still not apply. In all events, as we have explained, *NFIB* (which post-dated *Seven-Sky*) indicated that a party may not avoid the Anti-Injunction Act by purporting to challenge only the regulatory aspect of a regulatory tax. In *NFIB*, the Supreme Court stated unequivocally that the Anti-Injunction Act applies to penalties treated as taxes under the Tax Code.

RANDOLPH, *Senior Circuit Judge*, concurring: I join the court's opinion, in part because I do not agree that *Seven-Sky v. Holder*, 661 F.3d 1 (D.C. Cir. 2011), stands for the "alternative holding" the dissent describes. *See* Dissent at 10-12, 14-17, 17 n.7. The majority opinion in *Seven-Sky* never said, much less held, that the Anti-Injunction Act would not apply even if the penalty in that case were a tax within the meaning of the Act, which it was not.

KAREN LECRAFT HENDERSON, *Circuit Judge*, dissenting: The Florida and Texas Bankers Associations (Associations) challenge a 2012 IRS regulation (2012 Rule) that requires banks to report the interest they pay to non-resident aliens—a regulation with major economic consequences for their member banks. Although their challenge raises several difficult questions, the Anti-Injunction Act (AIA) is not one of them. Supreme Court and Circuit precedent makes plain that the AIA does not apply here: the 2012 Rule is a tax-reporting requirement with a tax penalty attached and the AIA does not bar a challenge to a tax-reporting requirement, *see Direct Mktg. Ass'n v. Brohl*, 135 S. Ct. 1124, 1131, 1133 (2015), to a regulation with a tax penalty attached, *see Seven-Sky v. Holder*, 661 F.3d 1, 8–10 (D.C. Cir. 2011), *abrogated on other grounds by Nat'l Fed'n of Indep. Bus. (NFIB) v. Sebelius*, 132 S. Ct. 2566 (2012), or to a tax-reporting requirement with a tax penalty attached, *see Foodservice and Lodging Inst., Inc. v. Regan*, 809 F.2d 842, 846 & n.10 (D.C. Cir. 1987). My colleagues conclude that a few sentences from *NFIB* somehow overrule our decisions in *Seven-Sky* and *Foodservice*—a conclusion that drastically overreads *NFIB* and ignores the Supreme Court's more recent pronouncement in *Direct Marketing*. Because the aforementioned decisions are neither distinguishable nor have they been overruled, we should follow them. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc) ("One three-judge panel . . . does not have the authority to overrule another three-judge panel of the court."); *Winslow v. FERC*, 587 F.3d 1133, 1135 (D.C. Cir. 2009) ("Vertical stare decisis—both in letter and in spirit—is a critical aspect of our hierarchical Judiciary headed by 'one supreme Court.' " (quoting U.S. CONST., art. III, § 1)). Even if they did not bind us, I believe our precedent charts the right course here. According to my colleagues, no party can obtain pre-enforcement review of a regulation that is enforced by a tax penalty; instead, he must *violate* the regulation (*i.e.*, break the law) and be assessed a tax penalty before he can have his day in court. I shudder at the

government-empowering consequences of their decision. I therefore dissent from my colleagues' dismissal under the AIA. Given the significance and closeness of the merits, however, I withhold judgment on the Associations' underlying challenge to the 2012 Rule.

## I.

## A.

The IRS enacted the 2012 Rule to narrow the "tax gap"—the difference between the taxes the IRS is owed and the taxes it actually collects. *See generally* Tax Gap for Tax Year 2006, IRS (Jan. 6, 2012), http://www.irs.gov/pub/newsroom/ overview_tax_gap_2006.pdf (estimating net tax gap of $385 billion per year, or 14% of total taxes owed). The 2012 Rule requires U.S. banks to report the interest they pay to non-resident aliens. *See* 26 C.F.R. §§ 1.6049-4(b)(5); 1.6049-8. Banks must report this information on Form 1042-S, *id.* § 1.6049-4(b)(5), and, if they fail to do so, they are subject to a tax penalty, *see* 26 U.S.C. § 6721. The IRS does not tax the interest earned by non-resident aliens. *See id.* §§ 871(i)(2)(A); 6049(b)(2)(B)(ii), (iv). Instead, it gives this information to other countries in exchange for information about the interest U.S. citizens earn in foreign banks. *See* 77 Fed. Reg. 23,391, 23,391 (Apr. 19, 2012). The IRS *does* tax that interest. *See* Form 1099-INT. The problem, however, is that the U.S. tax system is "based on a system of self-reporting" whereby "the Government depends upon the good faith and integrity of each potential taxpayer to disclose honestly all information relevant to tax liability." *United States v. Bisceglia*, 420 U.S. 141, 145 (1975). Unfortunately, some Americans try to hide income by depositing it in foreign banks—the infamous "Swiss bank account." *See generally* Sen. Carl Levin, Letter to Cmm'r Douglas H. Shulman at 2

(Apr. 12, 2011), *reprinted in* Supplemental Appendix 107 (estimating that offshore tax abuse causes annual loss of $100 billion in tax revenue). The idea behind the 2012 Rule is that, if U.S. citizens know foreign banks report the interest they earn abroad, they are more likely to self-report that income to the IRS. *See* FactCoalition, Comments and Request to Speak at Hearing (no date), *reprinted in* Appendix 403 (comparing 98.8% self-reporting rate for income subject to third-party reporting with 46% self-reporting rate for income that is not). Increased self-reporting, in turn, helps to narrow the tax gap.

U.S. banks do not like the 2012 Rule. They fear it will cause "capital flight" because non-resident aliens will no longer view the United States as a safe place to keep their money. *See* Compl. ¶ 37. The Associations filed suit on behalf of their members, challenging the 2012 Rule under the Administrative Procedure Act and the Regulatory Flexibility Act. Their challenge is pre-enforcement: none of their members has violated the 2012 Rule or been assessed a tax penalty. Instead, the Associations seek a judgment declaring the 2012 Rule invalid and an injunction preventing its enforcement.

The district court, after rejecting the Government's standing and AIA objections, concluded that the 2012 Rule was validly promulgated and entered summary judgment accordingly. *See Fla. Bankers Ass'n v. U.S. Dep't of Treasury*, 19 F. Supp. 3d 111, 119–26 (D.D.C. 2014). The Associations timely appealed. On appeal, the Government has renewed its standing[1] and AIA arguments.

---

[1] Specifically, the Government contends that the Associations lack standing to raise a Regulatory Flexibility Act challenge. In my view, the Government is plainly incorrect. For Article III standing, the Associations have standing if one of their members would have

4

**B.**

The AIA, with exceptions not relevant here, provides:

> [N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

26 U.S.C. § 7421(a).[2]  The statute is intended to "permit the United States to assess and collect taxes alleged to be due

---

standing.  *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).  Standing here is self-evident: banks are the "object" of the 2012 Rule and their injuries would be redressed if we granted the Associations' requested relief (*i.e.*, vacatur of the 2012 Rule).  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992).  The Government objects that the Associations never identified a member that qualifies as a "small" business under the judicial-review provision of the Regulatory Flexibility Act.  *See* 5 U.S.C. § 611(a)(1).  I read the Government's objection as one aimed at *statutory* standing, not Article III standing.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 & n.4 (2014).  In any event, the requirement is satisfied.  The Associations have submitted sealed affidavits identifying specific member banks that are "small" businesses as that term was defined when this suit was filed.  *See* 13 C.F.R. § 121.201 (2013) ("small" business includes commercial banks with $175 million of assets or less), *amended by*, 78 Fed. Reg. 37,409 (June 20, 2013).  The Associations therefore have standing to raise a Regulatory Flexibility Act challenge to the 2012 Rule.

[2]  The AIA governs suits for injunctive relief only.  The Declaratory Judgment Act, however, also bars litigants from obtaining declaratory relief "with respect to Federal taxes."  28 U.S.C. § 2201(a).  We have interpreted the two statutes as

without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund." *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 7 (1962). If taxpayers could challenge the validity of a tax and forego payment during the pendency of the lawsuit, it "would so interrupt the free flow of revenues as to jeopardize the Nation's fiscal stability." *Cohen*, 650 F.3d at 724; *see also California v. Grace Brethren Church*, 457 U.S. 393, 410 (1982). Our cases assume the AIA is a "jurisdictional" bar. *See Seven-Sky*, 661 F.3d at 5 (citing *Gardner v. United States*, 211 F.3d 1305, 1311 (D.C. Cir. 2000)).[3]

By its terms, the AIA applies if a suit (1) seeks to "restrain[] the assessment or collection" of (2) a "tax." *See*

---

"coterminous," *Cohen v. United States*, 650 F.3d 717, 730 (D.C. Cir. 2011) (en banc), so I will refer to the AIA only.

Likewise, some of the cases cited herein interpret the Tax Injunction Act (TIA), 28 U.S.C. § 1341—the state-tax analog of the AIA. Nevertheless, the TIA cases are directly applicable because we "assume[] that words used in both [the AIA and TIA] are generally used in the same way." *Z St. v. Koskinen*, No. 15-5010, 2015 WL 3797974, at *5 (D.C. Cir. June 19, 2015) (quoting *Direct Mktg.*, 135 S. Ct. at 1129 (alteration omitted)).

[3] It may be high time to revisit this assumption. None of our cases has thoroughly analyzed whether the AIA is jurisdictional, particularly in light of the Supreme Court's recent attempts to "bring some discipline to the use of the term 'jurisdiction.'" *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 824 (2013) (some quotation marks omitted); *see also, e.g.*, *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1631–38 (2015); *Gonzalez v. Thaler*, 132 S. Ct. 641, 648–52 (2012); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) (collecting cases). And there are good reasons to doubt the AIA's jurisdictional status. *See Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1158–59 (10th Cir. 2013) (en banc) (Gorsuch, J., concurring).

*Seven-Sky*, 661 F.3d at 5, 8. The key, in most cases, is the first requirement. The word "restrain" modifies "assessment or collection," not "tax." *See Direct Mktg.*, 135 S. Ct. at 1132. Accordingly, the AIA does not bar every suit that "will ultimately affect the money Treasury retains," *Cohen*, 650 F.3d at 726, or that "w[ill] have a negative impact on [government] revenues," *Direct Mktg.*, 135 S. Ct. at 1133. Nor does it bar "any court action related to any phase of taxation." *Id.* at 1132. Instead, "[t]he AIA has almost literal effect: It prohibits only those suits seeking to restrain the assessment or collection of taxes." *Cohen*, 650 F.3d at 724 (quotation marks omitted). The Supreme Court gives the words "assessment" and "collection" technical definitions. "Assessment" is "the official recording of a taxpayer's liability," *Direct Mktg.*, 135 S. Ct. at 1130—"the trigger for levy and collection efforts," *Hibbs v. Winn*, 542 U.S. 88, 90 (2004). "Collection" refers to "the act of obtaining payment of taxes due." *Direct Mktg.*, 135 S. Ct. at 1130. The Court also defines "restrain" in a "narrow[]" sense. *Id.* at 1132. The word "captures only those orders that *stop* . . . acts of 'assessment [or] collection,' " not orders that "merely *inhibit*" them. *Id.* (first emphasis added). Taken together, the AIA does not apply unless a plaintiff seeks to stop the technical processes of assessment or collection.

## II.

The question here is whether the Associations' pre-enforcement challenge to the 2012 Rule seeks to "restrain[] the assessment or collection" of taxes under the AIA. The 2012 Rule is a tax-reporting requirement: it requires U.S. banks to report information about nontaxable income (interest they pay to non-resident aliens) that the United States then exchanges for information about taxable income (interest foreign banks pay to U.S. citizens). As always, there is a

penalty attached to non-compliance with a regulation: for the 2012 Rule, the penalty is denominated a tax. It is located in subchapter 68B of the Tax Code, *see* 26 U.S.C. § 6721, and all subchapter 68B penalties are "treated as taxes under . . . the Anti–Injunction Act," *NFIB*, 132 S. Ct. at 2583; *see also* 26 U.S.C. § 6671(a) ("any reference in [Title 26] to 'tax' . . . shall be deemed also to refer to [subchapter 68B] penalties"). Thus, the precise sub-questions on appeal are whether the AIA bars a pre-enforcement challenge to a regulation that imposes (A) a tax-reporting requirement, (B) a tax penalty for non-compliance or (C) both. In my view, precedent answers all three questions in the negative.

**A.**

After oral argument in this case, the Supreme Court decided *Direct Marketing Ass'n v. Brohl*, which held that a challenge to a tax-reporting requirement was not barred by the TIA (and, by analogy, the AIA). *See* 135 S. Ct. at 1129, 1131, 1133. *Direct Marketing* involved a Colorado law that requires out-of-state retailers to, *inter alia*, report the names, addresses and purchases of their Colorado customers. *See* Colo. Rev. Stat. § 39–21–112(3.5)(d)(II)(A); 1 Colo. Code Regs. § 201–1:39–21–112.3.5(4). Non-compliant retailers are subject to a penalty. *See* Colo. Rev. Stat. § 39–21–112(3.5)(d)(III)(A); 1 Colo. Code Regs. § 201–1:39–21–112.3.5(3)(d). Like the 2012 Rule, the Colorado law is intended to encourage self-reporting: by requiring third-party reporting by retailers, Colorado sought to encourage its citizens to pay sales taxes on the goods they purchase from the Internet. *See Direct Mktg.*, 135 S. Ct. at 1127–28. A retailers' association brought a pre-enforcement challenge to the Colorado reporting requirement, seeking declaratory and injunctive relief. *See Direct Mktg. Ass'n v. Huber*, No. 10-cv-01546, 2012 WL 1079175, at *2 (D. Colo. Mar. 30, 2012).

The Supreme Court unanimously rejected the TIA defense. *See Direct Mktg.*, 135 S. Ct. at 1131; *id.* at 1134 (Kennedy, J., concurring); *id.* at 1136 (Ginsburg, J., concurring). A challenge to a tax-reporting requirement, the Court explained, does not "restrain" the "assessment . . . or collection" of taxes. *Id.* at 1131, 1133 (majority op.). The act of reporting occurs *before* the technical processes of "assessment" and "collection." *Id.* at 1129–30 ("[T]he Federal Tax Code has long treated information gathering as a phase of tax administration procedure that occurs before assessment . . . or collection. This step includes private reporting of information used to determine tax liability, including reports by third parties who do not owe the tax." (citations omitted)). After a retailer files the required report, "the State still needs to take further action to assess the taxpayer's use-tax liability and to collect payment from him." *Id.* at 1131. Of course, an injunction invalidating Colorado's law would "inhibit" the assessment or collection of taxes because "reporting requirements are intended to facilitate collection of taxes." *Id.* at 1132; *see also id.* at 1131. "[B]ut the TIA is not keyed to all activities that may improve a State's ability to assess and collect taxes." *Id.* at 1131. According to the High Court, "[s]uch a rule would be inconsistent not only with the text of the statute, but also with our rule favoring clear boundaries in the interpretation of jurisdictional statutes." *Id.*

Under *Direct Marketing*, the Associations' challenge to the 2012 Rule is not barred by the AIA. If successful, their challenge would at most "inhibit" the IRS's ability to assess and collect taxes. *Id.* at 1132. If banks no longer need to report the interest they pay to non-resident aliens, then the United States can no longer exchange that information with other countries and will be less successful in taxing the interest earned by U.S. citizens abroad. But "private reporting

of information" by banks is at least one step removed from the "assessment or collection" of taxes. *Id.* at 1129. In fact, this case is even further removed from assessment or collection than *Direct Marketing*: the information required to be reported here (interest paid to non-resident aliens) is not even *taxable*, unlike the information required to be reported in that case (purchases made by Colorado citizens). The IRS must take yet another step under the 2012 Rule—namely, exchanging the reported information with other countries and then auditing Americans keeping money abroad—before it can formally assess or collect any taxes. Thus, the Associations' challenge to the 2012 Rule is not barred by the AIA.

**B.**

Both the Government and my colleagues distinguish *Direct Marketing* on the basis that the reporting requirement there is enforced by an ordinary penalty[4] whereas the 2012 Rule is enforced by a *tax* penalty. *See* Government's 28(j) Letter at 2 (Mar. 9, 2015); Maj. Op. at 6–7. But, according to

---

[4] Both also simply assume that the penalty in *Direct Marketing* is not a tax. I would note, however, that the Supreme Court made no such determination nor relied on a tax-versus-penalty distinction. And whether a penalty is a tax under the TIA is not an entirely straightforward question. *See Seven-Sky*, 661 F.3d at 8 n.15 ("Courts do not defer to the labels states—as opposed to Congress—bestow on [penalties], because the meaning of a 'tax' under the Tax Injunction Act is a question of federal, not state, law."); *Travelers Ins. Co. v. Cuomo*, 14 F.3d 708, 713 (2d Cir. 1993) ("there is no bright line between [penalties] that are taxes and those that are not" under the TIA), *rev'd on other grounds*, 514 U.S. 645 (1995). Nevertheless, because the distinction should not matter in this case, I too will assume that the penalty in *Direct Marketing* is not a tax.

our decision in *Seven-Sky*, the provision of a tax penalty does not bar a pre-enforcement challenge that would otherwise satisfy the AIA. *See Seven-Sky*, 661 F.3d at 8–10.

The "primary" issue in *Seven-Sky* was the constitutionality of the Affordable Care Act's individual mandate, 26 U.S.C. § 5000A(a). *Seven-Sky*, 661 F.3d at 14. On that issue, we held that the mandate is a constitutional exercise of the Congress's Commerce Clause power, *id.* at 14–20. Before so ruling, however, the *Seven-Sky* Court considered whether the challenge to the individual mandate is barred by the AIA. *See id.* at 5–14. We concluded it is not barred for two independent reasons. First, the challenge did not implicate a "tax" at all: the enforcement mechanism for the individual mandate, 26 U.S.C. § 5000A(b)–(c), is an ordinary penalty, not a tax. *See Seven-Sky*, 661 F.3d at 5–8, 10–12. Second, even assuming the penalty is a tax, the AIA would not apply because the plaintiffs challenged the *mandate*, not the tax. *See id.* at 8–10; *see also id.* at 41 (Kavanaugh, J., dissenting) ("[T]he majority opinion separately contends that the Anti–Injunction Act does not apply to plaintiffs' suit *even if* the Affordable Care Act penalties *are taxes* for purposes of the Anti–Injunction Act." (emphases in original)). The *Seven-Sky* plaintiffs did not seek to "restrain[] the assessment or collection" of the penalty; rather, they "brought suit for the purpose of enjoining a *regulatory command*, the individual mandate, that . . . imposes obligations independent of the [penalty]." *Id.* at 8 (majority op.) (emphasis added). Specifically:

> The[ plaintiffs] seek injunctive and declaratory relief to prevent anyone from being subject to the mandate, irrespective of whether they intend to comply with it, and irrespective of the means Congress chooses to implement it. The harms appellants allege . . . exist

as a result of the mandate, not the penalty. . . . True, . . . the penalty would be a serious financial burden. But that harm affects only the limited class of individuals who fail to comply when the mandate goes into effect.

*Id.* at 8–9. Our second holding in *Seven-Sky* is an alternative holding but it nonetheless binds us. *See Ass'n of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 673 (D.C. Cir. 2013) ("Where . . . there are two grounds, upon either of which an appellate court may rest its decision, and it adopts both, the ruling on neither is obiter dictum, but each is the judgment of the court, and of equal validity with the other." (quotation marks and brackets omitted)).

Under *Seven-Sky*'s alternative holding, the Associations' challenge is not barred by the AIA, notwithstanding the 2012 Rule is enforced with a tax penalty. As in *Seven-Sky*, we must assess the Associations' challenge by making "a careful inquiry into the remedy sought, the statutory basis for that remedy, and any implication the remedy may have on assessment and collection." *Z St.*, 2015 WL 3797974, at *5 (citing *Seven–Sky*, 661 F.3d at 10). Here, the Associations seek declaratory and injunctive relief from the *regulatory requirement* that their members report the interest earned by non-resident aliens, 26 C.F.R. §§ 1.6049-4(b)(5); 1.6049-8, not the *tax penalty* for failing to comply with that requirement, 26 U.S.C. § 6721. The "harms [they] allege"— mainly, capital flight—"exist as a result of the [reporting requirement], not the penalty." *Seven-Sky*, 661 F.3d at 9. The Associations challenge the 2012 Rule "irrespective of whether they intend to comply with it, and irrespective of the means Congress chooses to implement it." *Id.* at 8–9. Moreover, their challenge comes before enforcement: none of their members has been assessed a tax penalty and, thus, they do

not seek to "restrain[]" the "assessment"—much less "collection"—of a tax. *See Direct Mktg.*, 135 S. Ct. at 1131, 1133; *Seven-Sky*, 661 F.3d at 10.

Granted, if the Associations succeed, the IRS will never collect *any* tax penalties under the 2012 Rule because there will be no Rule for the banks to violate. This argument, however, applies with equal force to the challenge in *Seven-Sky* but we allowed that challenge to proceed. Indeed, like the *Seven-Sky* suit, the Associations' challenge hardly implicates the purpose of the AIA: "protect[ing] the Government's ability to collect a consistent stream of revenue." *NFIB*, 132 S. Ct. at 2582. A tax penalty is meant to *deter* violations of the underlying regulatory requirement: if the penalty is avoided—and presumably this is the Government's intent—then individuals will have complied with the regulation and the IRS will collect zero revenue. *See Seven-Sky*, 661 F.3d at 6 ("[T]he aim of the shared responsibility payment is to encourage everyone to purchase insurance; the goal is universal coverage, not revenues from penalties."). A tax penalty like the one attached to the 2012 Rule is "unrelated to the protection of the revenues," a point that further demonstrates why this suit is not barred by the AIA. *Id.* at 13–14 (quoting *Bob Jones Univ. v. Simon*, 416 U.S. 725, 740 (1974)).

My colleagues—relying primarily on *Alexander v. "Americans United" Inc.*, 416 U.S. 752 (1974), and *Bob Jones*, 416 U.S. 725—contend that "plaintiffs cannot evade the Anti-Injunction Act by purporting to challenge only the regulatory aspect of a regulatory tax." Maj. Op. 8. But this same argument was made, *see Seven-Sky*, 661 F.3d at 42–43 (Kavanaugh, J., dissenting) ("*Bob Jones* and *Americans United* . . . mean . . . [t]he Anti–Injunction Act cannot be evaded by  characterizing the suit as a challenge only to the

regulatory aspect of a tax."), and rejected, *see id.* at 9–10 (majority op.), in *Seven-Sky*. *See also Z St.*, 2015 WL 3797974, at *5 (rejecting argument "that *Bob Jones* and *Americans United* require a broad approach to what constitutes prohibited tax litigation" (quotation marks omitted)). According to the *Seven-Sky* majority, *Americans United* and *Bob Jones* are only "superficially similar" to a case like this one. 661 F.3d at 9. Those cases involved challenges to the revocation of the respective organizations' tax-exempt status—challenges that "are *inextricably linked* to the assessment and collection of taxes." *Id.* at 10 (emphasis in original). The organizations' suits were "defeated by [their] own pleadings, since the *only* injuries plaintiffs identified involved tax liability." *Id.* (emphasis in original); *see also Z St.*, 2015 WL 3797974, at *3. This distinction is "crucial." *Seven-Sky*, 661 F.3d at 10. Here, the Associations do not challenge anyone's tax-exempt status and their pleadings identify injuries other than tax liability (*e.g.*, capital flight). According to *Seven-Sky*, "[i]t does not follow from [*"Americans United"* and *Bob Jones*] that plaintiffs can never bring a pre-enforcement challenge to a discrete regulatory requirement" that has a tax penalty attached to it. *Id.*[5]

---

[5] My colleagues also rely on *Bailey v. George*, 259 U.S. 16 (1922), for the proposition that the AIA blocks a suit that "target[s] the regulatory aspect of [a] tax." Maj. Op. 9. This argument was made in *Seven-Sky*, *see* 661 F.3d at 43–44 (Kavanaugh, J., dissenting), but failed. In any event, *Bailey* is plainly distinguishable. The plaintiffs there challenged the constitutionality of a tax—indeed, the tax had already been assessed and the plaintiffs sought an injunction barring its collection, *see* 259 U.S. at 19—whereas the plaintiffs here challenge a reporting requirement (not a tax) and bring their challenge pre-enforcement (no tax has been assessed).

The majority also contends that the Supreme Court's decision in *NFIB* overruled our alternative holding in *Seven-Sky*. *See* Maj. Op. 13 n.3. *NFIB did* overrule *Seven-Sky*'s Commerce Clause holding. *See NFIB*, 132 S. Ct. at 2585–93 (opinion of Roberts, C.J.); *id.* at 2644–50 (Scalia, Kennedy, Thomas, Alito, JJ., dissenting). But the Supreme Court did not overrule our AIA analysis. On the contrary, it agreed with our first holding that the enforcement mechanism for the individual mandate is a penalty, not a tax. *See id.* at 2582–84 (majority op.). And it did not reach our alternative holding. Because the *NFIB* Court concluded that the penalty is not a "tax" in the first place, it had no occasion to decide whether, even assuming the penalty is a "tax," the plaintiffs' suit did not seek to "restrain[] the assessment or collection" thereof. Thus, we must continue to follow *Seven-Sky*. *See Battery Recyclers*, 716 F.3d at 673. A subsequent Supreme Court decision does not overrule Circuit precedent unless it "eviscerates" it, *Nat'l Inst. of Military Justice v. DOD*, 512 F.3d 677, 684 n.7 (D.C. Cir. 2008) (brackets omitted)— something that does not occur if the High Court is silent or "never ultimately resolve[s]" the issue. *United States v. Williams*, 194 F.3d 100, 107 (D.C. Cir. 1999), *abrogated on other grounds by Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Bartlett v. Bowen*, 816 F.2d 695, 719 (D.C. Cir. 1987) (Bork, J., dissenting) ("Lower courts . . . do not usually infer silent overruling when the Supreme Court gives no explicit indication that it has addressed an issue and that such overruling is intended."); *cf. Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*, 784 F.3d 804, 815 (D.C. Cir. 2015) (even "[w]hen the Supreme Court *vacates* a judgment of this court," holdings not addressed "continue[] to have precedential weight" (emphasis added)).

The majority points to two passages from *NFIB* that purportedly overrule *Seven-Sky*'s alternative holding. In the

first passage, the Supreme Court observed that "[p]enalties in subchapter 68B are thus treated as taxes under Title 26, which includes the Anti-Injunction Act." *NFIB*, 132 S. Ct. at 2583. But the fact that a subchapter 68B penalty—like the one attached to the 2012 Rule—is a "tax" under the AIA does not resolve this case. Even if a "tax" is involved, the AIA does not apply unless the suit seeks to "restrain[] the assessment or collection" thereof. 26 U.S.C. § 7421(a); *see Direct Mktg.*, 135 S. Ct. at 1132 (TIA does not bar "any court action related to any phase of taxation"); *Z St.*, 2015 WL 3797974, at \*4 ("[W]e [have] rejected the IRS's view of 'a world in which no challenge to its actions is ever outside the closed loop of its taxing authority.' " (quoting *Cohen*, 650 F.3d at 726)). Indeed, the entire point of *Seven-Sky*'s alternative holding was to make clear that, even *assuming* the penalty is a tax, the AIA *still* would not apply. In the second *NFIB* passage, the Supreme Court concluded that "[t]he Affordable Care Act does not require that the penalty for failing to comply with the individual mandate be treated as a tax for purposes of the Anti-Injunction Act. The Anti-Injunction Act therefore does not apply to this suit, and we may proceed to the merits." *NFIB*, 132 S. Ct. at 2584. The majority reads the Court's statement ("If a penalty is not a tax, then the AIA does not apply") to mean its inverse ("If a penalty is a tax, then the AIA applies"). This reasoning does not work as a matter of logic. *See New England Power Generators Ass'n, Inc. v. FERC*, 707 F.3d 364, 370 & n.3 (D.C. Cir. 2013) (explaining "the logical fallacy [of] 'denying the antecedent,' " where one assumes wrongly that $\neg P \rightarrow \neg Q$ means $P \rightarrow Q$). Nor does it work as a matter of the AIA's text. Again, although a suit that does not implicate any "tax" is not barred by the AIA, it does not follow that a suit implicating a tax is *necessarily* barred: the suit may nonetheless not seek to "restrain[] the assessment or collection" of said tax. 26 U.S.C. § 7421(a);

*see Direct Mktg.*, 135 S. Ct. at 1132; *Z St.*, 2015 WL 3797974, at \*4.

Further, our alternative holding in *Seven-Sky* was the subject of at least eighty pages of briefing in *NFIB*.[6] If the Supreme Court meant to overrule it, the two passages the majority identifies would be an awfully cryptic way to do so. Indeed, even after *NFIB*, our sister circuits have continued to rely on reasoning similar to *Seven-Sky*'s alternative holding. *See, e.g.*, *Korte v. Sebelius*, 735 F.3d 654, 669 (7th Cir. 2013) ("The Anti–Injunction Act does not apply [to] . . . suits [that] seek relief from a regulatory mandate that exists separate and apart from the assessment or collection of taxes."), *cert.*

---

[6] *See* Court-Appointed *Amicus Curiae* Br. at 44–48; Court-Appointed *Amicus Curiae* Reply Br. at 20–22; Pet'r's Br. (AIA) at 38–41; Pet'r's Reply Br. (AIA) at 10–15; State Resp'ts' Br. (AIA) at 43–48; State Resp'ts' Reply Br. (AIA) at 17–21; Private Resp'ts' Br (AIA) at 9–25; Private Resp'ts' Reply Br (AIA) at 10–24; Am. Center for Law & Justice *Amicus Curiae* Br. at 11–17; Center for Fair Admin. of Taxes *Amicus Curiae* Br. at 26–27; State Chambers of Commerce and Related Orgs. *Amicus Curiae* Br. at 4–5, 8–12. [Briefs available at http://www.scotusblog.com/case-files/cases/u-s-department-of-health-and-human-services-v-florida/]

Indeed, the Government in *NFIB* conceded that *Seven-Sky*'s first holding—that the AIA does not bar the plaintiffs' challenge because the penalty is not a "tax"—is correct. *See* Pet'r's Br. (AIA) at 20–38. By contrast, the Government actively argued *against* *Seven-Sky*'s alternative holding. *See id.* at 38–41; Pet'r's Reply Br. (AIA) at 10–15. If the *NFIB* Court meant to address *both* of our holdings (as opposed to the first holding only), it undoubtedly would have spoken more precisely, given the Government's differing positions. *See Barenblatt v. United States*, 252 F.2d 129, 131 (D.C. Cir. 1958) (en banc) (Supreme Court does not leave issues "so vital" to the Government "to inference or interpretation"), *aff'd*, 360 U.S. 109 (1959).

*denied*, 134 S. Ct. 2903 (2014); *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1127 (10th Cir. 2013) (en banc) ("[T]he AIA does not apply to every lawsuit 'tangentially related to taxes,' and the corporations' suit is not challenging the IRS's ability to collect taxes. Rather, they seek to enjoin the enforcement of one HHS regulation. . . ." (citation omitted)), *aff'd*, 134 S. Ct. 2751 (2014). And, just this term, we treated *Seven-Sky* as good law. *See Z St.*, 2015 WL 3797974, at *5.[7]

## C.

To recap, precedent makes plain that neither a pre-enforcement challenge to a tax-reporting requirement nor a pre-enforcement challenge to a regulation enforced by a tax penalty is barred by the AIA. *See Direct Mktg.*, 135 S. Ct. at 1131, 1133; *Seven-Sky*, 661 F.3d at 8–10. Granted, this case

---

[7] Remarkably, my colleagues contend that *Seven-Sky* had no such alternative holding. *See* Maj. Op. 13 n.3; Concur. Op. 1. I am frankly unsure how they read pages 8–10 of that opinion. That portion of *Seven-Sky* comes after the Court's discussion of why the penalty is not a "tax" and is set off on both sides by asterisks. *See Seven-Sky*, 661 F.3d at 8–10. At the time, the author of the majority opinion here recognized that the Court's analysis was an alternative holding. *See id.* at 41 (Kavanaugh, J., dissenting) ("[T]he majority opinion *separately* contends that the Anti–Injunction Act does not apply to plaintiffs' suit *even if* the Affordable Care Act penalties *are taxes* for purposes of the Anti–Injunction Act." (first emphasis added)). If any doubt remained, the cited portion of *Seven-Sky* considers and rejects all of the arguments that my colleagues make here—a surefire sign that it is relevant to our decision today. And, even absent *Seven-Sky*, my colleagues' decision is refuted by the Supreme Court's narrow definitions of "restrain," "assessment" and "collection" in *Direct Marketing* and our decision in *Foodservice*. *See infra* Part II.C.

combines the two: the 2012 Rule is a tax-reporting requirement enforced by a tax penalty. Yet, for the AIA bar, the combination of two insufficient conditions does not equal a sufficient one. Our task is to interpret and apply the text of the AIA. The text does not impose a balancing test, whereby a suit becomes barred once it is sufficiently "related to" taxes or sufficiently important to the IRS. *See Direct Mktg.*, 135 S. Ct. at 1133 (rejecting "a vague and obscure boundary" because it "would result in both needless litigation and uncalled-for dismissal, all in the name of a jurisdictional statute meant to protect [government] resources" (quotation marks and citation omitted)). Instead, the AIA articulates a bright-line rule: the statute bars only those suits that "restrain[]" (defined narrowly) the "assessment or collection" (defined narrowly) of taxes. *See id.* at 1130–33. We know that tax-reporting requirements do not implicate "assessment or collection," *see id.* at 1131, and that attaching a tax penalty to a regulation that does not implicate "assessment or collection" does not trigger the AIA, *see Seven-Sky*, 661 F.3d at 8–10. That is all we need to know to decide this case.

In any event, this case is not one of first impression. As the district court recognized, *see* 19 F. Supp. 3d at 121, we held in *Foodservice* that a tax-reporting requirement enforced by a tax penalty is not barred by the AIA. *See Foodservice*, 809 F.2d at 846 & n.10. That case involved a tip-reporting requirement the IRS imposes on restaurants. *See* 26 C.F.R. § 31.6053-3(a)(1)(v); *see also* 26 U.S.C. § 6053(c)(1)(C). Wait staff is legally required to pay taxes on its tips. *See* 26 U.S.C. §§ 3121(q); 3401(f); 3231(e)(3). A waiter must report his tips to the restaurant, *id.* § 6053(a), and the restaurant withholds the appropriate amount of taxes from his paycheck, *id.* § 3402(k). Underreporting of tip income, however, is all too common. *See* S. REP. NO. 97-494 at 251 (1982) ("84 percent of the taxes on tip income is not paid. The only type

of income with a lower compliance rate is illegal income
. . . ."); *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 253
(Souter, J., dissenting) (2002) ("many employees report less
tip income than they receive").  To combat this problem, the
Congress enacted section 314 of the Tax Equity and Fiscal
Responsibility Act of 1982, *see* Pub. L. No. 97-248, § 314, 96
Stat. 324, 603–05, which statute the IRS implemented with
regulations, *see* 48 Fed. Reg. 36,807 (Aug. 15, 1983).  A
waiter must accurately report his tips or the restaurant deducts
an additional sum (a percentage of the restaurant's gross
receipts) from his paycheck.  *See* 26 U.S.C. § 6053(c)(3); 26
C.F.R. § 31.6053-3(d)–(f).  Section 314 also imposes a
reporting requirement: the restaurant must file an annual
return documenting the total amount of tips its employees
earned.  *See* 26 U.S.C. § 6053(c)(1)(C); 26 C.F.R. § 31.6053-
3(a)(1)(v).  The tip-reporting requirement is enforced with a
tax penalty.  *See* 26 U.S.C. § 6721.  In *Foodservice*, a trade
association of restaurants mounted a pre-enforcement
challenge to the reporting requirement, alleging that it
violated the Administrative Procedure Act and requesting
declaratory and injunctive relief.  *See Foodservice*, 809 F.2d
at 843.

We held that the trade association's challenge to the
reporting requirement was not barred by the AIA.  *See id.* at
846.[8]  Our reasoning was quite perfunctory: "On its face, the

---

[8]  The *Foodservice* Court did hold, however, that two of the
trade association's challenges were barred by the AIA.  *See
Foodservice*, 809 F.2d at 844.  We held that, unlike the reporting
requirement, the challenged regulations, 26 C.F.R. §§ 31.6053-
3(f)(1); 31.6053-3T(j)(9) (1986), "plainly concern the assessment
or collection of federal taxes" because they govern how restaurants
allocate tip income to employees in order to assess their tax
liability.  *See Foodservice*, 809 F.2d at 843–44.

regulation does not relate to the assessment or collection of taxes." *Id.* Nevertheless, we are bound to apply *Foodservice* if it is factually indistinguishable from this case:

> *Stare decisis* compels adherence to a prior factually indistinguishable decision of a controlling court. This principle assumes increased importance when the antecedent case involves construction of a statute. In its intra-circuit application, *stare decisis* demands that we abide by a recent decision of one panel of this court unless the panel has withdrawn the opinion or the court *en banc* has overruled it. This principle encourages uniformity in the application of legal standards, enhances predictability in decisionmaking, promotes the interests of judicial efficiency and economy, and evinces respect for the efforts of earlier courts that have struggled to educe the appropriate legal norms.

*Brewster v. CIR*, 607 F.2d 1369, 1373–74 (D.C. Cir. 1979) (citations omitted). And it *is* factually indistinguishable: both *Foodservice* and this case involve a tax-reporting requirement enforced by a tax penalty.

The Government believes *Foodservice* is distinguishable because the tip-reporting requirement was not intended to produce "information . . . about individual U.S. taxpayers" the IRS uses to collect more taxes. Appellee's Br. 33–34. Not so. As we recognized in *Foodservice*, "the avowed purpose of [the tip-reporting requirement] was to assist the [IRS] in its examination of returns filed by tipped employees and to provide the Service with data *from which it could target underreporting*." 809 F.2d at 846 n.10 (citing H.R. REP. NO. 97-760 at 556 (1982) (Conf. Rep.)) (emphasis added) (alterations omitted); *see also id.* ("The information is

necessary . . . for both *compliance purposes* and the Congressionally mandated tip study provided for in section 314(c) . . . ." (emphasis added)). Like the 2012 Rule, the impetus for the tip-reporting requirement was to increase self-reporting: the IRS thought that waiters and waitresses would be more likely to report their tip income if they knew their employer reports the information in any event. *See* S. REP. NO. 97-494 at 251–52 ("Expanded information reporting on tip income will encourage better reporting of such income by its recipients and facilitate Internal Revenue Service efforts to increase compliance in this area.").

The majority distinguishes *Foodservice* on the basis that the tip-reporting requirement there was enforced by a penalty, not a tax. *See* Maj. Op. 7–8. It is mistaken. The tip-reporting requirement is enforced with the exact tax penalty as the 2012 Rule: section 6721 of the Tax Code. *See* 26 U.S.C. § 6721(a) (imposing penalty for failure to file "information return"); *id.* § 6724(d)(1)(B)(xvi) (defining "information return" to include tip-reporting requirement at issue in *Foodservice*). Granted, the Congress attached the tax penalty to the tip-reporting requirement *after* oral argument in *Foodservice* (but three months before our decision). *See* Pub. L. No. 99-514, § 1501, 100 Stat. 2085, 2732, 2735 (1986). Nevertheless, we presume the *Foodservice* Court was aware of—and factored in—the amendment. *See United States v. Dixon*, 650 F.3d 1080, 1084 (8th Cir. 2011) ("[Defendant] asserts that it is unclear whether the district court was aware that [the law] was amended shortly before the hearing, but absent any indication to the contrary, we presume the district court knew the law and considered the provision in effect at the time of [its decision]."); *Fed. Cement Tile Co. v. Comm'r*, 338 F.2d 691, 694 (7th Cir. 1964) ("we assume the Court was aware of th[e] legislative history"); *see also Walton v. Arizona*, 497 U.S. 639, 653 (1990) ("[J]udges are presumed to know the

law and to apply it in making their decisions."), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 609 (2002). And the *Foodservice* Court's silence is consistent with the conclusion we later drew in *Seven-Sky*—*i.e.*, the inclusion of a tax penalty does not change the AIA analysis. *See Seven-Sky*, 661 F.3d at 8–10. Indeed, the *Seven-Sky* Court expressly relied on *Foodservice* to support its conclusion. *See id.* at 9 ("The [AIA] . . . has never been applied to bar suits brought to enjoin regulatory requirements that bear no relation to tax revenues or enforcement. Indeed, we have held that the Act does not apply to an IRS regulation that does not, by its terms, pertain to the assessment or collection of taxes." (citing *Foodservice*, 809 F.2d at 846)).

In sum, *Foodservice* held that a tax-reporting requirement enforced by a tax penalty is not barred by the AIA and we should do the same here. *See Brewster*, 607 F.2d at 1373. Although *Foodservice* is short on legal reasoning and its holding broadly exempts regulations like the 2012 Rule from the AIA, we should follow it even if we believe it was wrongly decided, announced an overly broad rule or failed to consider all aspects of the problem. *See LaShawn A.*, 87 F.3d at 1395 ("law-of-the-circuit doctrine . . . precludes reconsideration of [a] decision . . . even if the second panel believes the first was wrong"); *Battery Recyclers*, 716 F.3d at 673 (disposition of "identical claim" by earlier panel binds subsequent panel even if claim is "far better developed" in subsequent case). These principles ring especially true here as *Foodservice*'s holding—that a tax-reporting requirement enforced by a tax penalty "[o]n its face . . . does not relate to the assessment or collection of taxes," 809 F.2d at 846—has been *reaffirmed* in subsequent decisions. The Supreme Court's recent decision in *Direct Marketing* explains why tax-reporting requirements do not relate to the "assessment or collection" of taxes. *See* 135 S. Ct. at 1131. And, as

mentioned above, *Seven-Sky* expressly relied on *Foodservice* to support its holding that challenges to regulations enforced by tax penalties are not barred by the AIA. *See Seven-Sky*, 661 F.3d at 9.

Departing from *Foodservice* would be particularly problematic in this case. If the AIA bars the Associations' challenge, then a bank cannot obtain judicial review of the 2012 Rule unless it refuses to submit a Form 1042-S, incurs a tax penalty and initiates a refund suit. Yet, the "willful[]" failure to file a Form 1042-S is a misdemeanor punishable by a fine of $25,000 ($100,000 for corporations) or imprisonment. 26 U.S.C. § 7203. To require a would-be litigant to risk such consequences before obtaining judicial review would present serious constitutional concerns. *See Ex parte Young*, 209 U.S. 123, 148 (1908) ("[T]o impose upon a party . . . the burden of obtaining a judicial decision . . . (no prior hearing having ever been given) only upon the condition that, if unsuccessful, he must suffer imprisonment and pay fines . . . is, in effect, to close up all approaches to the courts" and is "unconstitutional on [its] face"); *Okla. Operating Co. v. Love*, 252 U.S. 331, 336–37 (1920) (forcing party to violate regulation and trigger contempt proceeding in order to obtain judicial review violates due process); *Cotting v. Godard*, 183 U.S. 79, 101–02 (1901) ("[W]hen the legislature, in an effort to prevent any inquiry of the validity of a particular [law], so burdens any challenge thereof in the courts that the party affected is necessarily constrained to submit rather than take the chances of the penalties imposed, then it becomes a serious question whether the party is not deprived of [due process]."). I do not believe we should interpret the AIA to mandate such a result. *See Olsen v. DEA*, 878 F.2d 1458, 1461 (D.C. Cir. 1989) ("We resist an interpretation dissonant with the cardinal principle that legislation should be

construed, if fairly possible, to avoid a constitutional confrontation." (quotation marks omitted)).

At the very least, such an approach makes for poor public policy. *See Mobil Oil Corp. v. Att'y Gen. of Com. of Va.*, 940 F.2d 73, 75 (4th Cir. 1991) ("Public policy should encourage a person aggrieved by laws he considers [illegal] to seek a declaratory judgment . . . , all the while complying with the challenged law, rather than to deliberately break the law and take his chances in the ensuing suit or prosecution."); *cf. Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (plaintiffs "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief"); *Gardner v. Toilet Goods Ass'n*, 387 U.S. 167, 172 (1967) (requiring litigants to "refuse to comply . . . and test the regulations by defending against government criminal, seizure, or injunctive suits against them" is not "a satisfactory alternative to [pre-enforcement review]"). I doubt that the Congress intended the AIA to operate in this manner. *Cf. Nat'l Rest. Ass'n v. Simon*, 411 F. Supp. 993, 996 (D.D.C. 1976) (Bryant, J.) ("[R]efusing to file the required information, and contesting a possible government assessment of a fine . . . puts the plaintiffs in the untenable position of either complying, with no judicial review, or of defying the government's interpretation of their legal obligations under the code, of being in essence a lawbreaker. The Court cannot imagine that the Congress intended such an anomalous result in a system which depends for its very existence on the principle of voluntary compliance."), *cited approvingly in Cohen*, 650 F.3d at 723.

Accordingly, I would follow *Direct Marketing*, *Seven-Sky* and *Foodservice* and conclude that the AIA does not bar this litigation from going forward. I therefore respectfully dissent.